UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY GORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-CV-180 NAB |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Kimberly Gore's (Gore) appeal regarding the denial of her application for supplemental security income under the Social Security Act. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). Gore alleged disability due to fibromyalgia, back injury, attention deficit disorder (ADD), and chronic fatigue syndrome. (Tr. 150.) The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 8.] Based on the following, the Court will affirm the Commissioner's decision.

I.  **Background**

On January 10, 2013, Gore applied for supplemental security income with an alleged onset date of March 1, 2012. (Tr. 119-24.) The Social Security Administration ("SSA") denied Gore's claim and she filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 64-71.) The SSA granted Gore's request for review. (Tr. 72-74.) An administrative hearing was held on April 1, 2014. (Tr. 26-54.) Gore, who was represented by counsel, and a vocational expert testified at the hearing. On April 25, 2014, the ALJ issued a

written opinion upholding the denial of benefits. (Tr. 11-19.) Gore requested review of the ALJ's decision from the Appeals Council. (Tr. 23.) On August 26, 2015, the Appeals Council denied Gore's request for review. (Tr. 1-4.) The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel,* 530 U.S. 103, 107 (2000). Gore filed this appeal on October 15, 2015. [Doc. 1.] The Commissioner filed an Answer and the certified Administrative Transcript on December 16, 2015. [Docs. 9, 10.] Gore filed a Brief in Support of Complaint on January 18, 2016. [Doc. 11.] The Commissioner filed a Brief in Support of the Answer on April 20, 2016. [Doc. 18.]

## II. Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A).

The SSA uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 416.920(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 416.920(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity (RFC) to perform past relevant work. 20 C.F.R. § 416.920(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 416.920(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

## III. ALJ's Decision

The ALJ determined that Gore had not engaged in substantial gainful activity since January 4, 2013. (Tr. 13.) The ALJ found Gore had the severe impairment of fibromyalgia. (Tr. 13.) The ALJ also found that Gore did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15.) The ALJ then found that Gore had the RFC to perform the full range of light work, as defined in 20 C.F.R. § 416.967(b). (Tr. 15.) The ALJ found that Gore had no past relevant work, but there were jobs in the national economy that she could perform. (Tr. 17-18.) Finally, the ALJ concluded that Gore had not been under a disability as defined in the Social Security Act, since January 4, 2013, the date the application was filed. (Tr. 19.)

## IV. Administrative Record

The following is a summary of relevant evidence before the ALJ.

### A. Gore's Hearing Testimony

Gore testified that at the time of the hearing she was 45 years old and lived alone. (Tr. 30.) She stated that she drives three to five miles a week to travel to and from her job as a nursery worker at a church and to the grocery store. (Tr. 31, 46.) She does not drive a lot, because her feet curl. (Tr. 46.)

Gore works between 3 to 5 hours a week in the church nursery during church services and other activities. (Tr. 43.) Gore testified that she cannot work full-time, because she cannot work physically on her feet. (Tr. 45.) She stated she does not want to get angry with the children. (Tr. 45.) She also stated that she cannot walk or sit for a long period time. (Tr. 45.) She testified that her hands and feet would go to sleep. (Tr. 45.) Gore stated she worked in temporary jobs for nine years prior to her job as a nursery worker. (Tr. 32.) Gore is able to read, balance a checkbook, and perform math. (Tr. 34.)

At the time of the hearing, Gore used two medications- Lyrica and Cymbalta and a supplemental magnesium pill. (Tr. 32.) Gore stated that the medications caused nausea, "real bad headaches," and dizziness. (Tr. 33.) Her doctors recommended that she go to a heated pool three days a week, but it is in a different town- Poplar Bluff. (Tr. 49.) Her doctor is not a wonderful doctor and tries to push drugs on her. (Tr. 49.) Her doctor also told her to walk for a period of time, but when she tried that her feet were burning and her toes were cramping so bad she could not finish. (Tr. 50.) A trainer at the fitness center told her not to use the treadmill or the elliptical with fibromyalgia. (Tr. 50.)

She is allergic to gluten and has chronic food allergies. (Tr. 38.) She is not taking any medication to deal with her allergies, because the medication they gave her made her allergies

5

worse. (Tr. 43.) Therefore, she does not eat wheat and some fruits and vegetables. (Tr. 44.) Gore can sit for thirty minutes before having to get up and move around. (Tr. 35.) She stated she cannot run or jump and she tries not to lift more than ten or fifteen pounds. (Tr. 35.) She can push and pull a cart of groceries depending upon the capacity. (Tr. 35.) She has trouble with concentration and memory. (Tr. 36.) She testified that sometimes she becomes upset easily. (Tr. 36.) She is able to get along with the children at the church kindergarten where she works and people other than family members. She can follow directions at work. (Tr. 37.) She received a referral to a mental health counseling center. (Tr. 37.)

Gore testified that she has fibromyalgia that affects her body from her head to her toes. (Tr. 39.) She is in pain all of the time with a pain severity of 7 or 8 on a 10 point scale. (Tr. 39.) The 7 or 8 pain level is after she has taken her medications. (Tr. 44.) She does not miss taking her medications. (Tr. 44.) Chronic fatigue affects her motivation. (Tr. 40.) She also has back problems from a previously broken back and has no cartilage on each side of her tailbone. (Tr. 40.) The effects of her back problems include, being unable to sit too long, lay in the bed wrong, and her legs give out. (Tr. 40.) She does not require the use of a cane, crutch, or walker. (Tr. 40.)

Gore asserts that she has temporomandibular joint disorder (TMJ) and it hurts and she is losing teeth. (Tr. 41.) She could not afford to go to the dentist so she has not been actually diagnosed with TMJ. (Tr. 41.) Gore stated she had problems with her right foot. She asserts that her toes are starting to go numb and turn in, which causes her to almost fall. (Tr. 41.)

Gore testified that she used to be an active person and she becomes angry with herself for not being able to do things physically and mentally. (Tr. 42.) She stated that she had carpal tunnel surgery on her right hand several years back and the surgeon left the staples or stitches in

6

too long. (Tr. 42.) As a result, she can't grip a toothbrush or hair brush and the effects are getting worse. (Tr. 42.)

During the day, Gore tries to do laundry, sit outside, and do some gardening. (Tr. 45-46.) But, she testified she cannot get down onto her hands and knees, because her hands go to sleep too much for that. (Tr. 46.) She watched some television, but she is not a "TV buff." (Tr. 46.) She tries to "piddle around the house" and get things done in the house. (Tr. 46.) She also goes to the grocery store and Wal-Mart. (Tr. 46.) Her friends visit her and she visits them. (Tr. 46-47.)

### B. Vocational Expert Testimony

Vocational Expert (VE) Anna Haster testified at the hearing regarding Gore's vocational history. (Tr. 51-53.) The VE also compiled a Past Relevant Work summary regarding Gore's work history. (Tr. 216.) She testified that a there are a wide range of occupations at the light work exertional level, including office, helper, mail clerk, and collator. (Tr. 51-52.) She also testified that the typical break schedule for a light work job is a 10 or 15 minute break in the morning and afternoon and a half-hour to hour lunch break. (Tr. 52.) If an employee took additional unscheduled breaks, because of fatigue on a daily basis, that would be inconsistent with competitive employment. (Tr. 52.) If an employee missed work a couple of days a month due to fatigue, he or she would be unable to sustain employment. (Tr. 53.)

### C. Medical Records

The relevant medical evidence is as follows:

#### 1. Dr. Carrie Carda

Gore's primary care physician was Dr. Carrie Carda. The record contains treatment records from November 2011 to July 2012. (Tr. 243-59.) Dr. Carda treated Gore for food

7

allergies, fibromyalgia, and attention deficit hyperactivity disorder (ADHD). (Tr. 243-59.) During that time, Dr. Carda had Gore undergo extensive IGG food testing and placed her on an elimination diet of gluten and dairy free to evaluate her response. (Tr. 249-55.) She also took tests for lupus and atopic dermatitis, which were negative. (Tr. 254-57.) Dr. Carda prescribed Prevpak, which helped intermittently and digestive enzymes with Valtane for Gore's digestive problems. (Tr. 250.) Dr. Carda also referred Gore for a esophagogastroduodenoscopy, which was normal. (Tr. 245.)

### 2. Dr. Angizeh Sadeghi

Dr. Carda referred Gore to Dr. Angizeh Sadeghi for abdominal pain and nausea. (Tr. 225-40.) During her initial visit on April 17, 2012, a physical examination showed that she had soft, obese, and non-distended abdomen. (Tr. 227-29.) She also had a positive Murphy's sign. (Tr. 228.) Her laboratory tests were normal. (Tr. 233-35.) Hepatobiliary imaging was normal, but her gallbladder ejection fraction was 17%. (Tr. 239.) On May 10, 2012, Gore had an esophagogastroduodenoscopy[1]. (Tr. 236-37.) The esophagogastroduodenoscopy indicated that Gore's esophagus, GE junction, stomach, and duodenum were normal. (Tr. 236.) Because of Gore's abnormal gallbladder ejection fraction, Dr. Sadeghi referred Gore to Dr. David Mauterer to discuss the utility of a cholecystectomy[2]. (Tr. 230.) On May 17, 2012, Dr. Mauterer examined Gore and found that there was mild tenderness in the epigastrium, but no guarding or rebound and that her bowel sounds were normal. (Tr. 231.) Dr. Mauterer diagnosed her with

---

[1] An esophagogastroduodenoscopy is an "endoscopic examination of the esophagus, stomach, and duodenum." Dorland's Illustrated Medical Dictionary 648 (37th ed. 2012).
[2] A cholecystectomy is "the surgical removal of the gallbladder." Dorland's Illustrated Medical Dictionary 348 (37th ed. 2012).

biliary dyskinesia[3] with biliary colic[4] and recommended that she have cholecystectomy. (Tr. 231.)

### 3. Dr. Barry Burchett

On October 9, 2012, Dr. Barry Burchett examined Gore for a physical consultative examination. (Tr. 268-74.) The physical examination noted that Gore had a normal gait, which was not unsteady, lurching, or unpredictable and she did not require use of a handheld assistive device. (Tr. 269.) Dr. Burchett observed that Gore appeared stable at the station and comfortable at the supine and sitting positions. (Tr. 269.) He noted that her recent and remote memory for medical events was good. (Tr. 269.) Dr. Burchett also observed that 14 of 18 standard fibromyalgia trigger point locations were reported to be tender to standard palpation. (Tr. 269, 271, 274.) Gore's physical examination results were otherwise normal with the exception of a bilateral positive straight leg raising test at 90 degrees. (Tr. 271.) Gore's range of motion values were normal in all extremities. (Tr. 271-73.)

### 4. Dr. Geetha Komatireddy

Dr. Carda referred Gore to a rheumatologist, Dr. Geetha Komatireddy, due to chronic pain, generalized arthralgias, myalgias, headaches, irritable bowel syndrome, and sleep problems. (Tr. 278.) Gore first visited Dr. Komatireddy on December 27, 2012. (Tr. 278-81.) Gore's physical examination was normal with the exception of 18 tender points on the fibromyalgia examination. (Tr. 280.) Dr. Komatireddy diagnosed Gore with chronic active fibromyalgia syndrome, chronic pain issues, and sleep disorder. (Tr. 280.) Dr. Komatireddy prescribed Gore Amitriptylin and recommended that she enroll in aquatic therapy or physical

---

[3] Biliary dyskinesia is the "sphincter of Oddi dysfunction." Dorland's Illustrated Medical Dictionary 578 (37th ed. 2012).
[4] Biliary colic means the "paroxysms of pain and other severe symptoms due to the passage of gallstones along the bile duct." Dorland's Illustrated Medical Dictionary 383 (37th ed. 2012).

9

therapy exercises. (Tr. 281.) Laboratory tests performed on the same date indicated a Vitamin D deficiency, but normal magnesium, phosphorus, and thyroid levels. (Tr. 282-83.) Dr. Komatireddy also examined Gore in May and August of 2013. (Tr. 308-313.) Those physical examinations were similar to her December 2012 visit, with the exception of very minimal crepitus found in her knee. (Tr. 308-313.)

### 5. Dr. Price Gholson

On January 29, 2013, Dr. Price Gholson conducted a psychological evaluation for Gore. (Tr. 292-97.) Dr. Gholson opined that Gholson had an above average presence of compulsions, obsessive thoughts, phobias, and depressive trends. (Tr. 296.) Dr. Gholson diagnosed Gore with major depressive disorder, recurrent episode, mild. (Tr. 297.) Dr. Gholson opined that Gore's concentration and attention were normal. (Tr. 297.) Dr. Gholson opined that Gore's general assessment functioning (GAF) score[5] was 65. A GAF score between 61 and 70 indicates mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, and has some meaningful interpersonal relationships. DSM-IV-TR at 34. (Tr. 297.)

### 6. Dr. Shahid Choundhary

On March 21, 2013, Gore visited Dr. Shahid Choundhary after a referral from Dr. Komatireddy. (Tr. 305-306.) Gore reported that she was having headaches, blurred vision, and diplopia[6]. (Tr. 305.) She also reported that she was having tremors and numbness of her fingers and hands that became worse when she was under stress. (Tr. 305.) Upon physical examination, Dr. Choundhary noted that Gore was anxious and nervous. (Tr. 305.) He observed that her

---

[5] Global Assessment Functioning score is a "clinician's judgment of the individual's overall level of functioning." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Rev. 2000) (DSM-IV-TR).
[6] Diplopia is "the perception of two images of a single object." Dorland's Illustrated Medical Dictionary 525 (37th ed. 2012).

examination was within normal limits, except she had a giveaway type of weakness on lower extremities and complained of pain on palpation of her muscles. (Tr. 305.) Gore received a nerve conduction study on April 11, 2013. (Tr. 300-302.) Dr. Choundhary opined that the nerve conduction study indicated mild to moderate carpal tunnel syndrome on the left hand and mild on the right hand. (Tr. 302.) Gore had a brain MRI on the same date. (Tr. 303-304.) The brain MRI indicated no acute intracranial hemorrhage, mass, or large territory infarct. (Tr. 303.)

## V. Discussion

Gore contends that the ALJ's disability determination was not supported by substantial evidence, because the ALJ failed to find manipulative limitations in the RFC assessment and that the ALJ's credibility analysis was flawed. The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

### A. Manipulative Limitations in the RFC Determination

First, Gore asserts that the ALJ's RFC determination is not supported by substantial evidence, because it did not include manipulative limitations. The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 416.945(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[7] Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. RFC is a medical question. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). An RFC determination

---

[7] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox*, 471 F.3d at 907. "A disability claimant has the burden to establish her RFC." *Eichelberger*, 390 F.3d at 591 (citing *Masterson*, 363 F.3d at 737).

The ALJ found that Gore's carpal tunnel syndrome was not a severe impairment, which is defined as an impairment that significantly limits the claimant's ability to do basic work related activities. (Tr. 13.) Thus, the ALJ's RFC assessment did not include any manipulative limitations and found that Gore could perform the full range of light work. Gore asserts that because a nerve conduction test indicated that she had mild to moderate carpal tunnel syndrome, the ALJ should have included manipulative limitations in the RFC determination. The Court disagrees. The ALJ's RFC determination is supported by substantial evidence in the record as a whole. First, a diagnosis of carpal tunnel syndrome does not always require manipulative limitations to be included in a RFC determination. *See Cypress v. Colvin*, 807 F.3d 948, 951 (8th Cir. 2015) (ALJ did not have to include manipulative limitations in RFC determination where claimant was diagnosed with moderate to severe bilateral carpal tunnel syndrome, because claimant retained full range of motion and full muscle strength). Second, the objective medical evidence does not support the inclusion of manipulative limitations in the RFC. Gore reported to her doctors that she had carpal tunnel release surgery on her right hand in the past. (Tr. 227, 269, 305.) A nerve conduction study completed in April 2013 indicated mild to moderate carpal tunnel syndrome on the left hand and mild carpal tunnel syndrome on the right hand. (Tr. 301-302.) Multiple physical examinations by treating and examining physicians showed that Gore had full range of motion, full motor and grip strength bilaterally throughout the alleged period of disability. (Tr. 270, 272, 280, 305, 309, 312.) The treating providers also found no tenderness, redness, warmth, swelling, or nodules. (Tr. 270, 280, 309, 312.) Third, Gore's activities of daily

living contradict her assertion that she has manipulative limitations severe enough to be included in the RFC. The record indicates that Gore works in a nursery, visits her grandchildren, drives, does laundry, and gardens, which indicate that her limitations are not as severe as she alleges. (Tr. 43, 46.) Therefore, the Court finds that the ALJ did not err by failing to include manipulative limitations in the RFC determination. *See Cypress*, 807 F.3d at 951 (ALJ light work RFC determination without manipulative limitations for claimant with carpal tunnel syndrome affirmed where claimant retained full range of motion in hands and wrists and full muscle strength); *Dunahoo v. Apfel*, 241 F.3d 1033, 1038-39 (8th Cir. 2001) (ALJ's RFC upheld where claimant was diagnosed with carpal tunnel syndrome, but maintained full range of motion, normal hand strength, and no swelling).

### B. Credibility Analysis

Next, Gore asserts that the ALJ's credibility analysis was not supported by substantial evidence. Gore asserts that in discrediting her, the ALJ improperly relied upon the absence of symptoms that are not diagnostic of fibromyalgia and improperly found that her daily activities were inconsistent with her pain complaints. Gore asserts that the ALJ should have believed her testimony. In considering subjective complaints, the ALJ must fully consider all of the evidence presented, including the claimant's prior work record, and observations by third parties and treating examining physicians relating to such matters as:

(1) The claimant's daily activities;

(2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) Any precipitating or aggravating factors;

(4) The dosage, effectiveness, and side effects of any medication; and

13

(5) The claimant's functional restrictions.

*Polaski v. Heckler*, 725 F.2d 1320, 1322 (8th Cir. 1984). It is not enough that the record contains inconsistencies; the ALJ is required to specifically express that he or she considered all of the evidence. *Id.* Although an ALJ may not discredit a claimant's subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006). The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. *Id.* Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988).

In this case, the ALJ found that Gore's only severe impairment was fibromyalgia. (Tr. 16.) As noted by the ALJ, Gore's fibromyalgia was diagnosed by different treating and examining physicians who verified that Gore had 14 of 18 positive trigger points. (Tr. 16-17, 269, 271, 274, 280.) The issue is not whether the ALJ should have believed Gore's testimony about the severity of her pain, but whether substantial evidence in the record as a whole supports the ALJ's credibility determination. The ALJ stated that Gore's credibility was lessened, because her claims of debilitating pain and fatigue were not supported by objective evidence, her activities of daily living were not limited to the extent expected based on her allegations, she had a poor work history, and there were no medical opinions in the record regarding functional limitations.

The Eighth Circuit has found that fibromyalgia has the *potential* to be disabling. *Forehand v. Barnhart*, 364 F.3d 984, 987 (8th Cir. 2004) (emphasis added). A diagnosis of fibromyalgia alone is not sufficient to find that a claimant is disabled. *Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011) (not every diagnosis of fibromyalgia warrants a finding that a claimant is disabled). "While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability." *Perkins*, 648 F.3d at 900.

The Court finds that the ALJ's credibility findings were consistent with *Polaski* and supported by substantial evidence in the record as a whole. First, the ALJ could consider activities of daily living, consistency with the overall medical evidence, and poor work history in determining Gore's credibility. *See* Goff *v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (ALJ can disbelieve subjective complaints if there are inconsistencies in the evidence as a whole and lack of corroborating evidence is just one of the factors the ALJ considers); *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004) (claimant's credibility lessened when considering sporadic work record reflecting relatively low earnings and multiple years with no reported earnings); *Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) (ALJ could consider that claimant functioned as the primary caretaker for her home and two small children). A review of the entire record demonstrates that ALJ did not rely solely upon any one of the factors in the credibility analysis. The ALJ considered several factors in evaluating Gore's credibility. "If the ALJ discredits a claimant's credibility and gives a good reason for doing so, [the court] will defer to its judgment even if every factor is not discussed in depth." *Perkins*, 648 F.3d at 900. The Court finds that the ALJ did not err in the credibility determination.

## VI. Conclusion

A review of the record as a whole demonstrates that Gore has some restrictions in her functioning and ability to perform work related activities, however, she did not carry her burden to prove a more restrictive RFC determination. *See Pearsall*, 274 F.3d at 1217 (it is the claimant's burden, not the Social Security Commissioner's burden, to prove the claimant's RFC). Therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Docs. 1, 11.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

Dated this 14th day of October, 2016.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE